Joseph Arthur CARBRAY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–191.

Court of Criminal Appeals of Oklahoma.

Jan. 27, 1976.

S. Thomas Coleman, Jr., Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

OPINION

BLISS, Judge:

Appellant, Joseph Arthur Carbray, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–1289, for the offense of Assault With a Deadly Weapon, After Former Conviction of a Felony. His punishment was fixed at a term of one hundred ninety-nine (199) years' imprisonment and from this judg-

ment and sentence a timely appeal has been perfected to this Court.

The first witness for the State was George E. Toole who testified that on June 6, 1974, he was employed as a Deputy Sheriff of the Osage County Sheriff's Office. He testified that on that day he was driving a green 1974 Pontiac LeMans which was equipped with a red light, a siren and a two-way radio; and at approximately noon that day he went to 3225 Timberlane Road to investigate a burglary. There, he obtained descriptions of the alleged burglars and their vehicle, having been described as a Ford Econoline van with the word "Empire" printed in black lettering on the side. He commenced a search for the vehicle and after observing it at the intersection of Osage Drive and Apache, he actuated his emergency equipment and gave chase. He observed the defendant sitting on the passenger side of the vehicle which he was pursuing. The defendant fired at least 15 shots at him during the course of the chase, all of which took place in Tulsa County. He thereafter testified that seven of the shots struck his vehicle and one entered the car eight inches from his left hip but was retarded by the steel reinforced door of the car. Toole stated that he then radioed for help and eventually dropped out of the chase due to car trouble. He later identified the gun in the van as one resembling the gun which defendant had used to fire the shots at him.

The State's subsequent witnesses, Officer A. L. Alexander, Officer Steve Smith and Officer John McSherry corroborated in all material aspects the testimony of Officer Toole.

The State then rested.

The defense called two witnesses who were present at the apprehension of the defendant. Their testimony was directed at the issue of who was, in fact, driving the van. Neither conclusively contradicted Officer Toole's testimony that the defendant sat in the passenger seat and fired the shots during the chase.

■ Defendant's first assignment of error submits that the 1957 conviction[1] was not used directly to enhance defendant's punishment in the instant case, but nonetheless it tainted the four other felony convictions which were used in the instant case to enhance defendant's punishment.[2] Such reasoning must be founded upon the fact of the invalidity or constitutional infirmity of the 1957 conviction. The defendant cites *Lamb v. Brown*, 456 F.2d 18 (10th Cir. 1972) and *Radcliff v. Anderson*, 509 F.2d 1093 (10th Cir. 1974), which essentially condemn as unconstitutional the juvenile statutes[3] of Oklahoma which provided for discriminatory application of a juvenile certification statute. However, the problem of convictions purportedly incurred during the effective period of such juvenile statutes was resolved by this Court in *Dean v. Crisp*, Okl.Cr., 536 P.2d 961 (1975). Thus, we do not find *Lamb*, supra, and *Radcliff*, supra, to be applicable to the instant case.

The record of the preliminary hearing reflects that the defendant, while represented by counsel, was convicted in 1957 and allegedly by the defendant's own testimony was sentenced to the penitentiary for a period of two (2) years. Such facts, standing alone, can only lead to the inference that defendant was ordered for prose-

1. The 1957 conviction occurred when defendant was 15 years of age but was stricken from the second page of the information at the preliminary hearing and was, thus, not used during the second stage of proceedings to enhance defendant's punishment. See, preliminary hearing transcript page 15.

2. The defendant asserts that the other four felony convictions were tainted by the 1957

conviction because that conviction was the predicate for the After Former Conviction of a Felony portion of the first of the four convictions which were used in this case to enhance punishment.

3. See, 10 O.S.Supp.1969, § 1101(a).

cution by the juvenile courts properly under the then valid, but now repealed statute, in 10 O.S.1951, § 112. See, *Ex parte Lewis,* 85 Okl.Cr. 322, 188 P.2d 367 (1947).[4] Therefore, we do not find the record before us reflects any facts which would affirmatively show that the defendant's conviction in 1957 was constitutionally infirm or obtained in denial of due process; yet, we only have the bald assertion that the conviction is invalid and thus taints the other four.

We, therefore, cannot be left to speculate upon the validity of the 1957 conviction and then, one step removed, attempt to examine purported taint of that conviction upon the four valid convictions used to enhance punishment in the instant case. We are of the opinion that defendant has failed to establish the invalidity of the 1957 conviction and we are of the further opinion that the instant case is not the forum in which collaterally to attack the 1957 conviction as constitutionally infirm. Therefore, having failed to prove the invalidity of the 1957 conviction, any argument directed to the taint of that conviction cannot be considered.

In passing, we would also seriously question the applicability of the principles enunciated in *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), and *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), regarding uncounseled convictions, to the instant case involving alleged counseled but otherwise invalid juvenile convictions.[5]

■ We would also note that assuming the juvenile conviction to be constitutionally infirm we are of the opinion that the conviction was not used directly to either impeach nor enhance the punishment and such is another clear basis for distinction between the instant case and the principles of *Loper v. Beto,* supra, and *United States v. Tucker,* supra. We therefore conclude that any taint resulting from the alleged invalid 1957 conviction was but harmless error as four valid prior former felony convictions were used to enhance punishment in the instant case. See, 20 O.S.1971, § 3001, and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Defendant's second assignment of error asserts that the District Attorney, in his closing argument during the second stage of the proceeding, made certain improper comments prejudicial to the defendant. We first note that prejudical remarks made in the second stage of the trial proceedings, after the guilty verdict has been returned, can only result in modification, if necessary, but not reversal. See, *Stokes v. State,* Okl.Cr., 501 P.2d 864 (1972).

We have examined in detail the closing argument of the prosecutor in the second stage of the proceeding and the only meritorious complaint of defendant involves the various comments of the prosecutor which

---

4. Title 10 O.S.1951, § 112, read as follows: "Every child who shall have been adjudged delinquent, whether allowed to remain at home, or placed in a home, or committed to an institution, shall continue to be a ward of the court until such child shall have been discharged as such ward by order of court, or shall have reached the age of twenty-one years, and such court may during the period of wardship cause such child to be returned to the court for further or other proceedings, including parole, or release from an institution: Provided, However, that notice of all applications to the court for such parole or release shall be given to the superintendent of such institution at least ten days before the time set, for the hearing thereof, or the consent, in writing of such superintendent to such parole or release shall be filed. The court may, however, in its discretion, cause such child to be proceeded against in accordance with the laws that may be in force governing the commission of crime."

This statute was repealed by laws 1968, Ch. 282, § 502, effective January 13, 1969.

5. We cannot presume the invaliity of a conviction from a silent record. A presumption of regularity must arise. Such is not the case in a record which is silent upon the presence or waiver of counsel. Therefore, this fact is the basis for distinction between the instant case and the *Lober* and *Tucker* cases. supra.

undoubtedly were calculated to refer to the pardon and parole policies in Oklahoma.

In *Fields v. State*, Okl.Cr., 511 P.2d 1116 (1973), this Court stated:

"[U]nmistakable reference to the defendant possibly being the recipient of good time credit during his institutional stay, [is] a practice which is clearly outside the scope of proper closing arguments." (at 1120)

Also see, *Tucker v. State*, Okl.Cr., 499 P. 2d 458 (1972).

█ The appropriate inquiry is whether, in light of the totality of the closing argument, such a reference to the pardon and parole system was made which resulted in prejudice to the defendant, thus meriting modification. We are of the opinion that the closing argument of the prosecutor, although not in bad faith, was calculated and made sufficient reference indirectly to the pardon and parole policy in Oklahoma such as to be prejudicial to the defendant. We are thus of the opinion that such reference under the particular facts of this case contributed to the jury's assessment of the particular punishment in the instant case. Therefore, justice dictates our modification of the defendant's sentence from a term of one hundred ninety-nine (199) years' imprisonment to a term of seventy-five (75) years' imprisonment.

For the above reasons, the judgment and sentence is modified from a term of one hundred ninety-nine (199) years' imprisonment to seventy-five (75) years' imprisonment; and as so modified is *affirmed*.

·BUSSEY, J., concurs.

BRETT, P. J., concurs in results.

BRETT, Presiding Judge (concurring in results):

While I concur in affirming this conviction, I do not thereby intend to place my stamp of approval on the decision in *Dean v. Crisp*, supra. Insofar as the juvenile conviction was stricken from the second page of the information, and because the record is silent as to the invalidity of the questioned former convictions, I concur in the results of this decision.